MAGER, Judge.
This is an appeal from a judgment of the Criminal Court of Record for Palm Beach County, Florida, holding the appellant, William C. O’Brien, in contempt of court and sentencing him to a prison term of one year.
The appellant was tried on a felony charge in the Criminal Court of Record for Palm Beach County, Florida. After he was convicted, the appellant appealed to the Fourth District Court of Appeal on April 8, 1968. While that appeal was pending, the appellant filed in the trial court a motion seeking to have the trial judge, Judge Vaughn Rudnick, and the public defender held in contempt of court for their alleged failure to expedite the preparation of the transcript of testimony for use in connection with the appeal. Judge Rudnick properly ignored the frivolous assertions in the motion and treated it as a request to extend the time for preparation of the transcript. This action inspired the appellant to write the following letter to Judge Rudnick:
“12 December ’68
“Sir:
By what rule, by what logic, by what audacity do you presume to adjudge an application for an order to Show Cause which names you as one of the respondents ?
That application, complete with certificate of service and oath of Insolvency, was filed with the Clerk of the Court at the Palm Beach County Courthouse. It was filed in such an ordinary manner so that it might obtain an objective hearing. As a matter of course and courtesy, a copy of the application was mailed to you — a respondent, and to the Public Defender (by title only) — the other respondent. And yet you quickly dispatched of the document as though ‘conflict of interest’ were make-believe words for the unreal world of television drama.
Am I so different from other men that you lacked the courage to allow the issues to be ruled upon by an uninvolved third party? Does but one Judge, you alone, sit at the Palm Beach County Courthouse ?
You did answer my application however. In the language of your denial you protect, defend, and justify the actions of the court reporter as though that individual were one of the respondents to the cause. Neither by name nor by title was that person so named. Therefore, since your wording conveys such a well-depicted false impression, I can conclude only that this deceitful effect was intentional.
*254 In answering my application, not only did you discuss elements and factors not presented (and does it really disturb you that men carelessly convicted seek justice?), but you failed to confront all the matters at issue. You did not answer those items which concerned you. — again misleading the reader of your denial by concealing the identity of the respondents and the content of the document.
The action, as obvious as the title page, was not filed against any others save both the person, Vaughn J. Rudnick, and the office — The Public Defender. It was not answered in that fashion.
I honestly thought that you were a better man, and I regret that you have revealed yourself as something less. I honestly thought that the multitude of errors which occurred about my trial were the result of the unusual confusion of that trial, now I suspect something else.
I will seek a review of this matter before higher authorities.
William C. O’Brien”
Judge Russell McIntosh, a Judge of the Criminal Court of Record of Palm Beach County issued an order on January 22, 1969, which directed appellant to show cause why he should not be held in contempt[1] by reason of the comments contained in the aforementioned letter. Following a hearing on the show cause order, Judge McIntosh entered an order on May 6, 1970, in which he concluded in part:
“The above letter constituted the charge of contempt of Court upon which hearing was had and this Court finds that the above letter constitutes contempt of Court for interfering with the administration of justice, for embarrassing or degrading a judge in the performance of his duty and for degrading judicial authority and dignity of the Courts generally.”
On the basis of this finding the judge then adjudicated appellant in contempt of court and sentenced him to imprisonment in the Palm Beach County Jail for a period of one year to run consecutively with any sentences which appellant was then serving.
The primary issue presented by this appeal is whether or not the letter which was written after appellant’s conviction but while his appeal therefrom was still pending constituted (indirect) criminal contempt of court. It is the position of the appellant that the letter in question was “absolutely privileged” and could not serve as a foundation for criminal contempt. Appellant further contends that Judge McIntosh did not have jurisdiction under Rule 1.840(a) (5), 33 F.S.A. to preside at the show cause order hearing.
We have carefully considered the contentions of the appellant and are of the opinion that they are without merit. A review of the case law reflects the absence of any hard and fast rule to determine, with any degree of certainty, those words or actions that will constitute contempt; the determination is generally dependent upon the context of the proceedings. However, the cases do reflect the promulgation of general principles against which one can measure the letter in question to determine whether it constitutes contempt. In Ex Parte Crews, 1937, 127 Fla. 381, 173 So. 275, at 279, it is stated:
“It may be said broadly, but certainly, that any act which is calculated to em *255 barrass, hinder, or obstruct the court in the administration of justice, or which is calculated to lessen its authority or its dignity, is a contempt. McCarthy v. Hugo, 82 Conn. 262, 73 A. 778, 135 Am.St.Rep. 270, 17 Ann.Cas. 219; Dahnka v. People, 168 Ill. 102, 48 N.E. 137, 39 L.R.A. 197. The test is not the physical propinquity of the act to the court, but its tendency to directly affect the administration of justice. * * * ”
Ex Parte Earman, 1923, 85 Fla. 297, 95 So. 755, at 760, which is considered to be one of the landmark cases in this state, discusses indirect contempts and criminal con-tempts and holds:
“An indirect or constructive contempt is an act done, not in the presence of a court or of a judge acting judicially, but at a distance under circumstances that reasonably tend to degrade the court or the judge as a judicial officer, or to obstruct, interrupt, prevent, or embarrass the administration of justice by the court or judge. See Ex parte McCown, 139 N.C. 95, 51 S.E. 957, 2 L.R.A. (N.S.) 603.
“A criminal contempt is conduct that is directed against the authority and dignity of a court or of a judge acting judicially, as in unlawfully assailing or discrediting the authority or dignity of the court or judge or in doing a duly forbidden act.”
In Zarate v. Culbreath, 1942, 150 Fla. 543, 8 So.2d 1 the court pointed out that there are factors other than “interference with the administration of justice” which must be considered in determining whether an offending act is contemptuous. In this regard it was observed in Zarate at p. 3:
“When we adhere to the enunciation contained in State v. Peacock, supra, we are brought to answer the question, whether or not the offending allegation was one which could reasonably result in ‘actual and direct obstruction to, or interference with, the administration of justice’. Aside from this we may consider whether or not the alleged offending act was such as to reasonably result in bringing the Judge or the Court into contempt, disrespect or shame in the public eye.” [2]
(Emphasis supplied.)
In our opinion the foregoing decisions support affirmation of the findings of the trial judge. We are not unmindful of the proposition that there may be circumstances where defamatory words may be regarded as privileged such as in the case where they are relevant or pertinent to the subject of inquiry (State ex rel. Giblin v. Sullivan, 1946, 157 Fla. 496, 26 So.2d 509; see also State ex rel. McGregor v. Peacock, 1934, 113 Fla. 816, 152 So. 616). We are unable to conclude as did the trial court below that the letter in question accusing Judge Rudnick of improprieties was in any way relevant or material to the inquiry within the meaning of State v. Sullivan, supra. Nor are we persuaded by the contention that the letter in question is in the nature of a “pleading”; for even if it was a “pleading” it could not serve to insulate contemptuous matter. See 6 Fla.Jur. § 13, p. 571, citing State v. Peacock, Zarate v. Culbreath, and State v. Sullivan, supra. See also note 3, infra. In this connection the comments made by the court in the Sullivan case are pertinent, 26 So.2d at 516:
“As a general rule, any publication tending to intimidate, influence, impede, embarrass or obstruct courts in the due administration of justice in matters pending before them constitutes contempt. The rule applies to any publication which has a tendency to prejudice or prevent fair and impartial action in a case under judicial investigation or by reflecting on the court, counsel, parties or witnesses respecting the cause. It is not necessary to show that they actually obstructed, impeded or embarrassed the administra *256 tion of justice, although it must appear that their tendency was of that character. Ex parte Biggers, 85 Fla. 322, 95 So. 763; 17 C.J.S., Contempt, pp. 42, 43, § 30. The filing of papers, however, which are gross and indelicate in language, the use of scandalous language in a brief, or the making of statements therein charging the court with improper motives in rendering a certain line of decisions, may constitute contempt. 12 Am.Jur. 395— 398, pars. 9-14.”
See also Cassidy v. Cassidy, Fla.App.1966, 181 So.2d 649.[3]
In Sullivan our Supreme Court quoted from several early decisions of other jurisdictions :
“In Ex parte Sullivan, 10 Okl.Cr. 465, 138 P. 815, 819, Ann.Cas.1916A, 719, the criminal court of appeals held: ‘It goes without saying that when an attorney or party files a paper, reflecting upon the integrity, fairness, and impartiality of the court, except where the statutes make it grounds for disqualifying the judge or obtaining a new trial on account of alleged prejudice or bias, or for the purpose of change of venue, he thereby makes himself guilty of a criminal contempt.’
“ * * *
“In Re Pryor, 18 Kan. 72, 26 Am.Rep. 747, an attorney addressed a letter to the trial judge containing the following statement: ‘I can hardly believe that such is the fact, for it is directly contrary to every principle of law governing injunctions, and everybody knows it, I believe.’ That Supreme Court sustained the judgment of the lower court, and used the following language: ‘If the language or conduct of the attorney is in-suiting or disrespectful, and in the presence, real or constructive of the court, and during the pendency of certain proceedings, we cannot hold that the court exceeded its power by punishing for contempt.’ ”
There is a striking similarity in the statements contained in the letter in the case sub judice and those held to be contemptuous in Cooke v. United States, 5 Cir. 1923, 295 F. 292. In that case an attorney had written a letter to a judge suggesting his disqualification on the ground of prejudice and bias. The letter stated, in part, at 295:
“ ‘Prior to the trial of cause No. 984, which has just been concluded, I believed that your honor was big enough and broad enough to overcome the personal prejudice against the defendant Walker, which I knew to exist, but I find that in this fond hope I was mistaken; * * *
“ ‘My hopes in this respect have been rudely shattered. I am now appealing purely to your honor’s dignity as a judge and sense of fairness as a man to do as in this letter requested, and please indicate to me at the earliest possible moment your honor’s pleasure with respect to the matters herein presented, so that further steps may be avoided.’ ”
Note the similarity between the foregoing and the following statements appearing, in part, in the letter sub judice:
“I honestly thought that you were a better man, and I regret that you have revealed yourself as something less. I honestly thought that the multitude of errors which occurred about my trial were the result of the unusual confusion of that trial, now I suspect something else.
*257 “I will seek a review of this matter before higher authorities.”
In addition, the letter in the case sub judice asserts that the conduct of the judge complained of was “deceitful” and that such conduct was “intentional” and further suggests efforts by the judge to mislead as well as suggesting that the judge is unconcerned with justice. While there may be some doubt as to whether the letter in question tends to obstruct or to interfere with the administration of justice there can be no question or doubt that the letter more than reasonably tended to degrade the court or the judge as a judicial officer. (Ex Parte Earman, supra.) 6 Fla.Jur., Contempt, § 23, points out:
“It is a general rule that the writing of an insulting or threatening letter, or one which is calculated to embarrass or hinder the court in the administration of justice, or which attacks the integrity of the court, to a court or judge concerned with a pending cause, may constitute' an act of contempt. * * * ”
We are not unaware of those decisions relating to the First Amendment guarantees of free speech and press; however this line of cases has no application whatsoever to the type of communication or the context and circumstances of the proceedings under consideration. As Judge Spector pointed out in Dawkins v. State, Fla.App.1968, 208 So.2d 119, “we are not here confronted with the publication of thoughts and opinions about a matter of general public interest” considered by the Supreme Court within the ambit of protection by the First Amendment guarantees of free speech and press. The importance of such protection is both beyond question but is simply not germane to the case sub judice. As Judge Spector pointed out in Dawkins, at 123-124:
“We are not unacquainted with the wide latitude which has been accorded our citizenry to speak their minds under the protective cover of the First Amendment, and this is as it should be. No judicial officer should be permitted to resort to the power to hold one in contempt as a device by which to stifle criticism or fair comment on the manner in which his judicial labors are performed. * * * ” (Emphasis supplied.)
We are unable to equate a letter reflecting upon the motives and integrity of the court written directly to the court in connection with matters under consideration as even being remotely related to those situations involving First Amendment guarantees contemplated by Pennekamp v. Florida, 1946, 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295.
It is significant to observe the absence in the record of the proceedings below of any effort on the part of appellant to deny the charge lodged against him or to explain the import of his letter. Generally, in cases of indirect contempts the sworn answer of the alleged contemner fully denying the charge serves as a justifiable basis to purge such contempt. See 6 Fla. Jur., Contempt, § 54, p. 611. The only defense to the charge in the case sub judice was that the letter in question was a “pleading” and it was therefore “absolutely privileged”.
In summary, we are of the opinion that the letter in question was not a “pleading”; even considering the letter in the nature of a pleading we are of the opinion that the trial court properly concluded that the letter constitutes criminal contempt within the meaning of the aforementioned cases. With regard to appellant’s contention that the trial court did not have jurisdiction to preside over the hearing in the show cause order this same point was considered and rejected by this court in Bumgarner v. State, Fourth District Court of Appeal, 245 So.2d 635, opinion filed March 12, 1971.
Affirmed.
CROSS, C. J., concurs.
REED, J., dissents, with opinion.

. Judge Rudnick, as a result of the letter, issued a rule to show cause in Case No. 66C2754 which was the felony case then pending on appeal. The file in Case No. 66C2754 containing the show cause order was apparently transferred to Judge McIntosh who issued a new rule to show cause separate and independent from the felony proceedings then pending against the appellant. Judge McIntosh was of the opinion that because of penden-cy of the appeal in the felony proceedings Judge Rudnick was without jurisdiction to enter a show cause order and that such show cause order had no legal effect. It is Judge McIntosh’s order that is the subject matter of the instant appeal.

. State ex rel. McGregor v. Peacock, 1984, 113 Fla. 816, 152 So. 616, was concerned primarily with alleged contemptuous statements made in connection with the disqualification of a judge which is not involved in the appeal sub judice.

. In Cassidy the appellant apparently made certain statements in the presence of the Judge during a hearing. The Third District Court held: “Appellant’s second point is addressed to a claim of privilege for the statements. The statements made by the appellant, a party to litigation, were such as to impugn the integrity of the judicial process, and they were not made pursuant to any affidavit of disqualification or other process requiring the making of the statements. We hold that the statements were not privileged. See State ex rel. Giblin v. Sullivan, 157 Fla. 496, 26 So.2d 509 (1946).”