James WILSON, a/k/a Jason
Wilson, Plaintiff,

v.

Michael W. MOORE, Defendants.

No. 99–10086–CIVMOORE.

United States District Court,
S.D. Florida.

March 6, 2002.

James Wilson, pro se, Hamilton Correctional Institution, Jasper, for Plaintiff.

Mark Rosenblatt, Attorney General Office, Department of Legal Affairs, Fort Lauderdale, for Defendant.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon the Petition of James Wilson for Writ of Habeas Corpus (filed September 13, 1999).

THE MATTER was referred to the Honorable Charlene H. Sorrentino, United States Magistrate Judge. A Report and Recommendation dated February 1, 2001 has been filed recommending that the Petition be DENIED as to Claims Two, Three, and Four, and GRANTED as to Claim One, and that the conviction for criminal contempt be vacated.

It appears from a review of the record that no written objections to the Report and Recommendation have been filed.

Accordingly, after a *de novo* review of the record herein, and being otherwise fully advised in the premises, the Court enters the following Order ADOPTING the Report and Recommendation in part. For the reasons stated in the Report and Recommendation, the Petition will be DENIED as to Claims Two, Three, and Four. For the reasons set forth below, the Petition will be GRANTED as to Claim One, and Petitioner's conviction for criminal contempt VACATED.

*CLAIM ONE: FIRST AMENDMENT*

*I. Background*

In Claim One, Petitioner contends that his conviction for indirect criminal contempt of court was entered in violation of his First Amendment right to freedom of speech. Petitioner is currently confined in a state correctional institution, and is serving sentences for multiple felonies that are not under attack in this petition. This petition concerns only the six month consecutive sentence that was added to that term for his contempt conviction.

As discussed by Magistrate Judge Sorrentino, the conviction for indirect criminal contempt stemmed from a letter written to Chief Judge Richard G. Payne of the Circuit Court of Monroe County, Florida. Chief Judge Payne had presided over Petitioner's trial, but recused himself prior to the March 25, 1997 sentencing. The letter was sent after the recusal and sentencing, but during the pendency of the appeal. The letter is quoted verbatim in the Report and Recommendation, and need not be restated here. This Court agrees with Magistrate Judge Sorrentino's characterization of the letter as insulting but not threatening.

After a hearing before Judge Steven P. Shea, Petitioner was held to be in indirect criminal contempt. *See* DE # 10, Ex. B. Judge Shea found that the letter contained several "profane" statements, a "denigrating" statement, and a "derogatory" statement, and noted that Petitioner addressed Judge Payne as "Mr." rather than "Judge" or "Your Honor." Judge Shea further noted: "Indirect criminal contempt may be found not only for violation of a court order, but also if Defendant's conduct was calculated to embarrass, hinder, intimidate, influence, impede or obstruct the Court in the administration of justice, or calculated to lessen the Court's authority and dignity." Ultimately, the court concluded that the statements "were calculat-

ed to embarrass the Court and to lessen the Judge's authority and dignity," and therefore, held Petitioner in criminal contempt.

Petitioner appealed this conviction, and the conviction was affirmed *per curiam. See* DE # 10, Ex. E. In support, the appellate court cited only *O'Brien v. State,* 248 So.2d 252 (Fla. 4th DCA 1971). *See Wilson v. State of Florida,* 712 So.2d 457 (Fla.Dist.Ct.App.1998). Petitioner's motion in state court for postconviction relief was also denied, and that denial was also affirmed on appeal. Petitioner then timely filed the instant Petition in this Court.

Because Petitioner's First Amendment claim was litigated in state court, this Court may not grant his application for writ of habeas corpus unless the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Upon a *de novo* review of the record, this Court concludes that Petitioner's conviction, and the state court's disposition of his appeal, were contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.

*II. Relevant Supreme Court Precedent*

■ It is well-established that there must be a "clear and present danger of the obstruction of justice" before out-of-court speech may be punished—even when the matter in question is still pending before the court. *See, e.g., Craig v. Harney,* 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947). Stated differently, the Supreme Court has also said that such speech may

only be punished where it "creates a danger of imminent and substantial harm." *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991).

For example, in *Craig v. Harney,* a newspaper publisher, editorial writer, and news reporter were held in contempt for publishing news articles that gave an "unfair" report of what had transpired before a judge, when the matter was still pending before the court. *Craig,* 331 U.S. at 378, 67 S.Ct. 1249. The Supreme Court held that the power to punish for contempt requires a more substantial showing than simply that the comments reflected on the competence of a judge in handling cases. *Id.* Rather, the court must ensure that the speech created an imminent and serious threat to the administration of justice. *Id.*

Similarly, in *Pennekamp v. Florida,* 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946), the Miami Herald and an individual defendant were held in contempt of court for the publication of certain editorials critical of the attitude of judges in the jurisdiction toward individuals who had been charged with a crime. *Id.* The Supreme Court applied the clear and present danger standard, and further held:

> What is meant by clear and present danger to fair administration of justice? No definition could give an answer. Certainly this criticism of the judge's inclinations or actions in these pending nonjury proceedings could not directly affect such administration. This criticism of his actions could not affect his ability to decide the issues. *Here there is only criticism of judicial action already taken, although the cases were still pending on other points or might be revived by rehearings.* For such injuries, when the statement amounts to defamation, a judge has such remedy in

damages for libel as do other public servants.

*Id.* at 348, 66 S.Ct. 1029 (emphasis added).

Furthermore, in the seminal case *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court noted:

> Where judicial officers are involved, this Court has held that concern for the dignity and reputation of the courts does not justify the punishment as criminal contempt of criticism of the judge or his decision. Such repression can be justified, if at all, only by a clear and present danger of the obstruction of justice.

*Id.* at 272–73, 84 S.Ct. 710 (internal citations and quotations omitted). *Sullivan* involved a libel action by an elected city commissioner for a critical editorial advertisement that appeared in a New York newspaper. *Id.*

Finally, in *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991), an attorney who held a press conference after the indictment of his client was disciplined based on a finding that his remarks had a "substantial likelihood of materially prejudicing" the adjudicative proceedings. *Id.* The Supreme Court did not determine the constitutionality of this Nevada rule prohibiting attorney speech that has a "substantial likelihood of materially prejudicing" the proceedings, because it held that the phrase could be interpreted as punishing "only speech that creates a danger of imminent and substantial harm." *Id.* at 1036, 111 S.Ct. 2720. However, the Supreme Court did reject the disciplinary proceedings against the attorney, holding: "Neither the disciplinary board nor the reviewing court explains any sense in which petitioner's statements had a substantial likelihood of causing material prejudice." *Id.* at 1038, 111 S.Ct. 2720. Importantly, the Supreme Court noted that

the "judicial system, and in particular our criminal justice courts, play a vital part in a democratic state," and observed that the attorney's speech critical of the prosecution was "classic political speech." *Id.* at 1034, 111 S.Ct. 2720.

### III.  Standard Applied by State Court

In the instant case, the state appellate court did not apply this Supreme Court precedent, instead relying exclusively upon the case *O'Brien v. Florida,* 248 So.2d 252 (Fla.Dist.Ct.App.1971), in upholding the contempt conviction.  The *O'Brien* case permits a contempt conviction for critical speech sent to a judge where the speech merely "tended to degrade the court or the judge as a judicial officer"—a patently less stringent standard than the clear and present danger test.[1]

In addition, the trial judge in the instant case did not even make a finding that the speech *"tended* to degrade the court or the judge as a judicial officer."  Rather, as discussed, Judge Shea simply found that the statements "were *calculated* to embarrass the Court and to lessen the Judge's authority and dignity."  This "calculated" to embarrass or to lessen authority and dignity standard is also patently less stringent than the standards set forth in the Supreme Court cases discussed above.

Notably, the facts of *O'Brien,* relied on by the state appellate court, are indeed remarkably similar to the facts of the instant case.  For example, in both cases, a defendant in a criminal case sent a letter to the trail judge after his conviction but while the appeal was still pending.  The instant case is only different in that the trial judge had recused himself from the case before sentencing and before the letter was sent.  Importantly, the *O'Brien*

court distinguished the line of Supreme Court cases applying a stricter test from these facts, stating:

> We are unable to equate a letter reflecting upon the motives and integrity of the court written directly to the court in connection with matters under consideration as even being remotely related to those situations involving First Amendment guarantees contemplated by Pennekamp v. Florida.

*Id.* at 257 (*citing Pennekamp v. Florida,* 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946)).

In essence, the state court in *O'Brien* distinguished the Supreme Court cases applying the clear and present danger test on two grounds.  First, the letter was directed at matters then under consideration by the appellate court.  Second, the letter was sent directly to the formerly presiding judge by the defendant.  For these reasons, the state court in *O'Brien* applied a considerably less stringent requirement than the clear and present danger test.  Presumably, the state court in the instant case relied on the same two distinctions.

### IV.  Discussion

If the state court's failure to apply the more stringent standard to these facts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," then Petitioner's contempt conviction must be vacated.  28 U.S.C. § 2254(d).  Interpreting the "unreasonable application" provision, the Supreme Court has most recently held: "A state determination may be set aside under this standard if, under clearly estab-

---

1.  Specifically, the *O'Brien* court held: "While there may be some doubt as to whether the letter in question tends to obstruct or to interfere with the administration of justice there can be no question or doubt that the letter more than reasonably tended to degrade the court or the judge as a judicial officer." *Id.* at 257

lished federal law, the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000).

The first distinction drawn by the state court—that the letter addressed matters then under consideration by the appellate court—is clearly without merit. As discussed above, the Supreme Court in *Craig v. Harney* expressly applied the clear and present danger standard to speech about matters *then pending* before the court. Moreover, the speech in *Pennekamp v. State of Florida* and *Gentile v. State Bar of Nevada* was also about matters then pending before the Court. Therefore, the fact that Petitioner's speech involved a matter still pending before the appellate court does not mean that the speech is not "related to those situations involving First Amendment guarantees." *O'Brien*, 248 So.2d at 257.

The second distinction drawn by the *O'Brien* court—that the letter was sent directly to the judge by the defendant—is also unreasonable. Granted, the Supreme Court has not applied the clear and present danger test to an indistinguishable set of facts. The cases cited above pertained to news reports about pending trials, to editorials critical of certain judges, and to an attorney's public speech about a pending case, not to speech by an individual defendant. Nevertheless, whenever faced with out-of-court speech that is critical of the judiciary, the Supreme Court has been scrupulous in requiring a showing more substantial than that the speech "tended to" or was "calculated to" embarrass a judge. Therefore, the state court was unreasonable to apply this lesser standard to this set of facts.

Indeed, the language used by the Supreme Court in these First Amendment cases has been quite broad, and in no way infers that the holdings should be limited to their facts. As discussed, in *Gentile*, the Supreme Court firmly held that the attorney's critical speech was "classic political speech" at the core of First Amendment protection. *Gentile*, 501 U.S. at 1034, 111 S.Ct. 2720. In addition, in *Pennekamp*, the Supreme Court expressly held that criticism of judicial actions already taken "could not affect [the judge's] ability to decide the issues." *Pennekamp*, 328 U.S. at 348–49, 66 S.Ct. 1029. The Court further observed that the proper remedy of a defamed judge is in a libel action, not in the power of contempt. *Id.* Finally, in *Craig v. Harney*, the Court required a more substantial showing to punish speech than that the "competence" of the judge had been attacked. *Craig*, 331 U.S. at 378, 67 S.Ct. 1249.

This language in binding Supreme Court precedent clearly indicates that the lenient standard applied by the state court is constitutionally insufficient to restrict out-of-court speech to or about a judicial officer. Therefore, the state court was unreasonable not to extend the standard announced in these Supreme Court cases to Petitioner's speech. As such, the conviction must be vacated as violative of Petitioner's First Amendment rights.

## CONCLUSION

In conclusion, for the foregoing reasons, it is

ORDERED AND ADJUDGED that Claims Two, Three, and Four of the Petition of James Wilson for Writ of Habeas Corpus (filed September 13, 1999) are DENIED. It is

FURTHER ORDERED that Claim One is GRANTED, and Petitioner's Conviction for Contempt is VACATED.

This case is CLOSED. Any pending motions not otherwise ruled on are DENIED as moot.