**GEORGE ZARATE, et al., v. HUGH CULBREATH, as Sheriff of Hillsborough County, Fla.**

8 So. (2nd) 1                                                En Banc
May 12, 1942

Hugh L. MacArthur, Neil C. McMullen and LeRoy Allen, for plaintiffs in error.

J. Tom Watson, Attorney General, Millard B. Conklin, Assistant Attorney General, Woodrow M. Melvin and Kenneth Ballinger, Special Asisstant Attorneys General, for defendant in error.

BUFORD, J.:

The writ of error herein was taken to a judgment of the Circuit Court for Hillsborough County, remanding plaintiffs in error to custody of respondent on habeas corpus to test the legality of a judgment holding petitioners to be guilty of contempt of the court and sentencing each of them to thirty days imprisonment in the county jail, entered in the Criminal Court of Record of Hillsborough County.

In effect the charge of contempt of court against the defendants is that in proceedings under the statute, Section 8663 (178), 1940 Supp. to C.G.L., seeking to show the disqualification of the Judge of the Court because of prejudice to sit in the trial of a criminal case wherein plaintiffs in error were defendants, such defendants alleged in a pleading that when an application was made to the Judge by counsel for defendants for a reduction of the amount of the bail bonds required to be given by the defendants, the Judge "angrily refused to entertain said application and refused said application" for reduction of the bail bonds.

It is not denied that the defendants did sign and did through counsel present to the Judge in open court

the disqualification application containing the quoted words; and it is conclusively proven by counsel for defendants who moved for a reduction of the bail bonds, that the Judge did not "angrily refuse to entertain said application" for reduction of the bail bonds; and did refuse the application for his own reasons. It appears that defendants were not present when the application was made by their counsel for reduced bail bonds; and that counsel who made the application did not state to any of the defendants or to their subsequent counsel that the Judge had "angrily refused to entertain said application" for reduced bail.

The Judge filed the following:

### ORDER OF DISQUALIFICATION

"All eight of the defendants in this cause by John Pinkerton and LeRoy Allen, their attorneys of record, have filed herein a motion requesting me to disqualify myself on the ground of prejudice. Attached to the motion are the usual suggestion, signed and sworn to by six of the defendants, certificate of counsel and several supporting affidavits, all as required by the Statute.

"The Court has carefully considered these documents and has come to the conclusion that under the law in this State, as repeatedly interpreted by the Supreme Court of Florida, he has no alternative except to enter an order recusing himself. The suggestions and the supporting affidavits contain some grounds which are utterly devoid of merit. Likewise, they contain statements which are not true in fact and the Court here and now denies that such statements are true, just as it has done on previous

occasions. However, in passing upon the question of whether I should disqualify myself the law requires that I accept these statements as true. While many of the statements fail to show prejudice, there can be no doubt that the fourth ground of the suggestion and the affidavits in support thereof, if the facts therein stated were true, would show prejudice against the defendant, George Zarate. Although this ground does not relate to any of the other defendants, it is obvious that if the Trial Judge is disqualified to try one of several defendants jointly informed against in one information he is disqualified as to all. There is no method by which the substitute Judge could preside over the trial as to one defendant, and the resident Judge preside as to the others. There would be no justification for granting a severance since none has been requested. Even if that could be legally done, there could be no justification for holding two separate trials. "While not admitting the truth of the other statements contained in the suggestion and supporting affidavits, the Court in this order particularly wishes to deny the allegation contained in the third ground of said suggestion that this Court angrily refused to entertain the application of the defendants for a reduction in their bonds, and that the Court stated no facts or reasons for such refusal. The making of said allegation, however, is a matter to be dealt with by the Court separately from ruling on said motion for disqualification, and will be taken up by the court immediately.

"For the reason aforesaid, I do hereby certify my disqualification to it or preside over the trial of said cause."

The "fourth ground of the suggestion" of disqualification of the Judge is as follows:

"Affiants further say that during the first primary in June, 1936, George Zarate, one of the defendants and affiants herein, was present at Precinct 34, located on Main Street between Howard and Albany in West Tampa, Florida, about 2:00 o'clock in the afternoon, when the defendant, George Zarate, engaged in a personal altercation with the Hon. John R. Himes, he then being a candidate for the office of Judge of the Criminal Court of Record in and for Hillsborough County; on said occasion Judge Himes, addressing himself to the defendant, George Zarate, said 'You damn fellows are stealing this election from me and I will get even with you when I am elected Judge', whereupon this defendant, George Zarate, to avoid any further difficulties with the candidate for the office of Judge, proceeded voluntarily to the County Jail, followed by the said John R. Himes; that said defendant, George Zarate, immediately proceeded to the office of the chief deputy sheriff in charge and immediately thereafter said John R. Himes appeared and again began making threatening statements, personally directed to the defendant and his associates, whereupon the defendant, George Zarate, at the request of the then chief deputy in charge started to leave the office, before the defendant, George Zarate, left the office the said John R. Himes said to the chief deputy 'If you don't put these fellows in jail there is going to be hell', and affiants verily believe and fear because of such matters said John R. Himes, Judge of the Criminal Court of Record of Hillsborough County, Florida, is biased and prejudiced against them."

This Court has held that:

". . . even in cases of proceedings to invoke the disqualification of a judge, the power to puunish for contempts exists where there is such uncalled for acts or wrongful conduct as amounts to an actual and direct obstruction to, or interference with, the administration of justice, . . . " State v. Peacock, 113 Fla. 816, text 817, 152 So. 616.

"Judicial wisdom and the experiences of the past would seem to demand that the extraordinary powers given to courts to punish for contempt be not used except to prevent *actual* and direct obstruction of, or interference with, the administration of justice, . . ." State v. Peacock, 113 Fla. 816, text 817, 152 So. 616.

"Determination of the facts and inferences to be drawn therefrom, is necessarily left to the decision of the trial judge, and his conclusion as to the acts done, and as to their contemptuous character or effect will not be lightly disturbed by this Court on habeas corpus. Nor will the findings of the Judge ordinarily be set aside when reasonably supported by the facts appearing of record. State ex rel. Grebstein v. Lehman, 100 Fla. 481, 129 So. 818." Baumgartner v. Joughin, 105 Fla. 335, text 343, 141 So. 185.

When we adhere to the enunciation contained in State v. Peacock, supra, we are brought to answer the question, whether or not the offending allegation was one which could reasonably result in *actual* and direct obstruction of, or interference with, the administration of justice." Aside from this we may consider whether or not the alleged offending act was such as to reasonably result in bringing the Judge or the Court into contempt, disrespect or shame in the public eye.

Neither result is apparent here. A judge's righteous anger may be aroused or his sense of pleasure and amusement may be awakened, his sympathies may go out to the unfortunate. He is human, and if he evinces human emotions without allowing them to deter him from the path of rectitude, no one should think the less of him therefor.

Some contention is made that the mere statement in the suggestion that the Judge failed and refused to consider suggestor's petition was contemptuous. To this we do not agree. Hardly a day passes that we do not receive in this Court petitions for rehearing in which it is alleged that we have overlooked or have failed to consider matters presented or that we have failed and refused to apply the settled law of the case. When these things appear we exercise the human qualities of generosity and charity, search carefully to see whether or not we have erred, and dispose of the matter as we deem law and justice demand, looking for no evidence of contempt where none was intended. Charity and forbearance are the handmaidens of justice.

A judge should control his natural and human emotions so as to preserve the dignity of the office but to say that he must never evince such human traits is to go beyond reason and violates the very rules which he should observe.

It appears to us that it would violate the fundamental principles of justice to hold that when a litigant files a suggestion of the disqualification of a trial judge such judge, though recusing himself because the petition, aside from the offending allegations, alleges sufficient grounds, may hold petitioner in contempt of court on the ground that the judge did

not, in doing an act, evince the attitude in which the suggestion alleges he did evince in doing such act.

In this case the question of whether or not the Judge had "angrily refused etc." may well be a matter of opinion and, in such case, the opinion of the judge as to whether or not the judge evinced anger would be the controlling factor in the determination of whether or not that allegation of the suggestion was true.

The question is not what the suggestors did, but is whether or not the judge evinced anger when he refused to grant application for reduction of bail.

We observe from the record that the suggestors were not in court when the application for reduction of bond was made by their then attorney, Mr. Mac-Farlane, who did not represent them when the suggestion of disqualification was made.

If the offending allegation of the petition was a material allegation (and we think it was not) then those who verified it under oath were amenable to criminal prosecution for perjury and to trial by jury. We do not think the placing of the offending allegations supra in the verified suggestion of disqualification, was sufficient to support a judgment for contempt of court. That was not the only, nor the most serious, ground upon which the defendants based the suggestion of disqualification. In fact, that allegation constituted no sufficient ground for disqualification and, therefore, could not have obstructed justice.

The judgment should be reversed and the petitioners should be discharged.

So ordered.

BROWN, C. J., and WHITFIELD, J., concur specially.

CHAPMAN, THOMAS and ADAMS, JJ., concur.

WHITFIELD, J., concurs specially.

WHITFIELD, J., concurs in the reversal on the ground that the penalty imposed is excessive in this case.

BROWN, C. J., concurs.