REED, Judge
(dissenting).
I would reverse the adjudication of contempt.
The bedrock issue presented by this appeal is whether or not the letter which was written after the appellant’s conviction, but while his appeal therefrom was still pending, constituted a criminal contempt of court. We are not faced with the issue as to whether or not the motion to hold Judge Rudnick and the public defender in contempt of court amount to criminal contempt. Nor are we faced with a question relating to conduct during a trial and .in the presence of judge or jury or both. We are solely concerned with the character of the appellant’s letter of 12 September 1968.
Criminal contempt has been defined as any conduct which tends to obstruct or interfere with the administration of justice by the judicial branch of government. Zarate v. Culbreath, 1942, ISO Fla. 543, 8 So.2d 1. The purpose of the power to punish for contempt is to protect the proper administration of justice by the judiciary. It is not to satisfy an offended judge. Ex parte Earman, 1923, 85 Fla. 297, 95 So. 755. Hence the essence of contempt is hindrance of the judge in the performance of his office.
Unless we are to give judges a privileged status in our society, a very careful distinction must be made between communications which are merely personally offensive to a judge and those which may have a genuinely degrading effect on the performance of his official duties. The former should never be considered as contemptuous. The latter, when they take the form of out-of-court comment regarding a pending judicial proceeding, may be held contemptuous only where the evidence indicates that they present a clear and present danger to the proper administration of justice. Pennekamp v. Florida, 1946, 328 U. S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295; Craig v. Harney, 1947, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546; Wood v. Georgia, 1962, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569.
From the present record I cannot see how the appellant’s letter could have obstructed Judge Rudnick in the performance of his office or have presented a clear and present danger to the administration of justice by Judge Rudnick. The letter was not, as the majority points out, a pleading. It did not require filing or any other judicial labor. In fact when Judge Rudnick received the letter, jurisdiction of the case had been lodged in the appellate court. The most grievous threat contained in the epistle was that of, “ * * * a review of this matter before higher authorities.” It could and should have been disposed of by relegation to the trash bin. The appellant’s letter was clearly unfair and irrational, but as a matter of law it was not contempt.
The majority opinion, by failing to recognize the distinction between comment which is merely personally offensive and that which has some real potential for embarrassing a judge in the performance of judicial office places this court in conflict with the decision of the Florida Supreme Court in Ex Parte Earman and Zarate v. Culbreath, supra, to say nothing of the decisions from the United States Supreme Court cited above. But more importantly, the decision of the majority has — in the opinion of this writer — created a precedent by which a judicial officer may be insulated from personal criticism.
What was said by Mr. Justice Reed in the Pennekamp case (66 S.Ct. p. 1039), supra, epitomizes my view as to the law and philosophy of this case:
“ * * * We conclude that the danger under this record to fair judicial administration has not the clearness and immediacy necessary to close the door of permissible public comment. When that door is closed, it closes all doors behind it.”