270 So.2d 22 (1972)
Sam W. KLEINFELD, Appellant,
v.
The STATE of Florida, Appellee.
No. 71-1201.
District Court of Appeal of Florida, Third District.
November 7, 1972.
Rehearing Denied December 20, 1972.
William M. Moran, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and Arnold R. Ginsberg, Asst. Atty. Gen., for appellee.
Before PEARSON and CHARLES CARROLL, JJ., and HOWELL, CHARLES COOK, Jr., Associate Judge.
HOWELL, CHARLES COOK, Jr., Associate Judge.
Proceeding "not wisely but too well", Othello, Act V, Sc. 2, appellant, an attorney, forgot in his probably otherwise commendable zeal for his client that "any breach of an attorney's duty to maintain the respect due by him to the court is a contempt of court," 6 Fla.Jur., Contempt, Sec. 12, p. 569; he was undeterred by the admonition of Florida Civil Trial Practice, 2d Ed., Sec. 25.11, 8., that one of the "remedies for misconduct" on the part of "the trial lawyer" is a "contempt citation for misconduct continued after warning"; and he embarked upon a well-nigh unintermittent series of repetitive motions, intransigent arguments, and disregard of the repeated assurances, requests, and, even, verbal orders[1] of the judge trying the case.
*23 In a carefully explanatory and detailed (pp. 145-148 of the transcript of the record) judgment, the beleaguered jurist found appellant "guilty of a direct criminal contempt" and fined him $1,000.00; "in default of the payment of which" he was required "to serve a term of 72 hours in the Dade County Jail."
The instant appeal ensued.
Although there are eighteen assignments of error, each of which has been carefully considered and with deference found to be without merit, appellant's chief thrust is capsulated in the assertion that what he did was not "a direct criminal contempt;" a position we respectfully hold is unsupported by the facts which all too unfortunately demonstrate a course of conduct by appellant "calculated to embarrass, hinder, or obstruct the court in the administration of justice, or which is calculated to lessen its authority or its dignity," Anderson v. Gerstein, etc., Fla.App. 3, 1964, 164 So.2d 891, 893; the statements, rulings and orders of the judge having been "properly made in the course of the administration of the cause by the trial court," Vernell v. State ex rel. Gerstein, State Attorney, Fla.App. 3, 1968, 212 So.2d 11, 13.
And so: With heavy heart[2] and regretful compulsion, trustful and optimistic that appellant will in futuro acquit himself with unassailable decorum before all future Benches, we hold, as we did in Vernell, that "the judgment in contempt did not present an abuse of discretion on the part of the trial court. Due process was observed"  and the judgment, therefore, is
Affirmed.
NOTES
[1] Imprimis, appellant "would also like to have the motion to suppress heard prior to trial, as is also our right, Judge." Then he said, variously, "I have a motion to make ... ... I would like to have a motion heard ... ... the information is faulty, and I would like to have a motion that ... ... I would like to make a motion ... ... If you will listen to my motion, you will not try this case ... ... Your Honor, that motion to dismiss goes right to the heart of the information ... ... Judge, may I make a statement for the record ... ... Judge, would you please let me make a statement on behalf of my client, into the record ... ... I want to make a statement into the record, that is all ... ... I merely want to make a statement ... ... I just want to make  ... ... May I make a motion into the record ... ...?"

Most patiently did Judge Coe react. He kept giving appellant such assurances as, "I am going to hear it outside the presence of the jury, but not prior to trial ... We will hear it prior to the trial, but we will not hear it twice, outside the presence of the jury ... ... I will hear them at the time of trial ... ... You are going to get that (i.e., `a separate hearing outside the presence of the jury') ... ... Sir, I am going to let you make every statement that the law authorizes, at the proper time, but the proper time is not now ... ... I am telling you again that I am going to give you every opportunity, when you decide you can come back over here and try this case, to make any statement that you are authorized to make ... ... I told you numerous times that I was going to give you every opportunity to make every motion that had to be made. You continued to interrupt this Court ... ... As I said about five to ten times on the record, I am going to give you every opportunity to make every lawful motion that you want to make. We will pick the jury, we will let the Bailiff have the jury, before the jury is sworn, and you can make every motion that you want to make. I have said that five or ten times and I will say it one more time, and also that your client's position is not going to be prejudiced or jeopardized in any way. You will get every opportunity to protect the record, and if the State has acted or exceeded the bounds, that is what the appellate courts are for."
Variously interspersed throughout all this, the voice of appellant would not be stayed.
The record reveals the following:
"Mr. Kleinfeld: May I argue the law for a moment?
"The Court: No.
"Mr. Kleinfeld: I want to enter the Law on the record.
"The Court: You may not ... ...
"Mr. Kleinfeld: Judge, may I 
"The Court: You may not.
"Mr. Kleinfeld: I think it is my right to make a statement for the record.
"The Court: Sit down, sir.
"Mr. Kleinfeld: I just want 
"The Court: Sir, just sit down.
"Mr. Kleinfeld: Judge, I must make this 
"The Court: Sir 
"Mr. Kleinfeld: I do not want 
"The Court: I am liable to say something to you, sir. I am telling you to sit down.
.....
"The Court: What am I going to have to do, send you over to the County Jail?
"Mr. Kleinfeld: Judge, if that is necessary, I will go. I do not want ... ..."
Ultimately the Judge was indeed constrained to send appellant to the county jail until he was "ready to come back over here and proceed with this case, ...", which he soon did  the record, however, thereafter containing a good nine pages of further colloquy between the appellant, the judge, and the Assistant State Attorney; during which colloquy appellant persisted in proclaiming, "I have been wronged, my client has been wronged, not by this Court, but by this man (indicating opposing counsel) standing at my side, by an act I can only consider scurrilous, and in a word, shyster tactics ... ... if only the Court would permit me to make a statement into the record ... ... I have only tried to defend my client and I have tried to defend myself against the shabby shyster tactics of this man standing next to me ... ... he (this time, referring to his client) has retained me in this courtroom to protect his rights against shabby shyster tactics like this, and that is all I have to say ... ... May I ask the Court a question? ... ... May I, Your Honor, ask him (the Assistant State Attorney) one question?" Finally the Court set "a hearing at 8:30, Thursday morning, for you to show cause why you should not be held in contempt."
[2] (Because appellant is an officer of the court, a member of that elite group which is The Florida Bar)