393 So.2d 567 (1981)
STATE ex rel. Joseph T. GARLOVSKY, Appellant,
v.
The Honorable E.L. EASTMOORE, Circuit Judge, Appellee.
No. 79-289.
District Court of Appeal of Florida, Fifth District.
January 14, 1981.
Rehearing Denied February 13, 1981.
Dan R. Warren of Judge & Warren, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Gregory C. Smith, Asst. Atty. Gen., Daytona Beach, for appellee.
COBB, Judge.
During the course of a criminal prosecution in the circuit court, the appellant, Joseph Garlovsky, who was defense counsel, was adjudicated guilty of direct criminal contempt pursuant to Rule 3.830, Florida Rules of Criminal Procedure,[1] by the trial judge, the Honorable E.L. Eastmoore. The appellant was fined $100.00 or, in default thereof, he was to be confined in the county *568 jail for 24 hours. Execution of sentence was stayed pending disposition of this timely appeal.
Garlovsky was representing one Marian McCrae in two separate trials in Putnam County. McCrae had been charged by information in Case No. 327 and in Case No. 328 with selling cannabis to an undercover agent, Harold Lee. In a pre-trial deposition held on September 6, 1979, Lee stated that he had never sworn under oath before any state attorney, assistant state attorney, or notary public concerning the events alleged in the two pending informations against McCrae prior to the filing of said informations on May 14, 1979.
On September 7, 1979, the state filed an amended information based on the then sworn testimony of Lee given at the deposition, which was attended by the assistant state attorney prosecuting the case. The amended information was identical to the first information which had been filed in May. At a hearing held immediately prior to trial on September 10, 1979, in Case No. 327, the trial court denied the defense motion to dismiss, holding that the defect had been cured and that there was no prejudice to the defense which would necessitate a continuance.
During the trial of Case No. 327 on September 10, 1979, attorney Garlovsky, in cross-examination of Lee, inquired as to whether he had appeared in person before the assistant state attorney and sworn to the charges against McCrae. The state's objection of irrelevancy was sustained by the court. Garlovsky attempted to make a further statement after the court's ruling, and got as far as saying, "Your Honor, I would introduce " when he was cut off by the court's admonition that the objection had been sustained. Garlovsky, in the face of the prior rulings, persisted. The next question was: "Did you ever appear before any notary ... and swear to the facts that you are testifying here today?" The state again objected, and the objection again was sustained.
At the close of the state's evidence in Case No. 327, defense counsel again raised the point regarding the failure of the state to have Lee's sworn testimony prior to filing of the original information, and again received an adverse ruling. Thereafter, the defendant was convicted.
On September 26, 1979, a pre-trial hearing was held in Case No. 328. This followed the filing of an amended information in the case on September 21, setting forth the identical charge as in the original information filed in May. At the hearing, attorney Garlovsky moved ore tenus to dismiss on the same grounds he had pursued in Case No. 327, relating to the state's belated compliance with Rule 3.140(g), Florida Rules of Criminal Procedure.[2] It was Garlovsky's contention that the originally defective information could not be cured by amendment because of constitutional proscriptions. The trial court advised defense counsel: "I'll treat your motion as filed and deny it just as I did in the other case. The Court does not agree with your view."
Case No. 328 proceeded to trial on October 10, 1979. After completion of jury selection, defense counsel renewed his pre-trial motion to dismiss based on the allegedly defective information, and the trial court against denied the motion. At this point, a portentous colloquy ensued between the attorney and the trial judge:
MR. GARLOVSKY: Thank you, Your Honor. I have one final statement, and that is our personal relationship.
In the last trial I stated that I felt that  well, I moved to disqualify, and I suggest at this time not to waive that, that you disqualify yourself in this case.

*569 And I feel, Your Honor, that maybe our relationship has reached a point  you know, you have told me on many times I've bored you and bored the jury. You called me aside at side-bar when I feel I'm only making legitimate objections. I was not interfering with the processes of the jury or the Court. That you chastise me on the form of my questions where there were no objections.
THE COURT: I did what, sir?
MR. GARLOVSKY: You chastised me.
THE COURT: I did not chastise you, sir. I directed you to frame your questions in a certain manner. There is a great deal of difference, Mr. Garlovsky, between that and chastisement.
MR. GARLOVSKY: Judge, I feel because you're a stern task-master in your own courtroom, that the stern manner 
THE COURT: That adjective is yours, not mine.
MR. GARLOVSKY: Okay. Well, with the manner in which you, I would say, conduct the trial in this cause, that you have a manner in speaking to me that is different than speaking to the State Attorney.
I may have offended you, and I feel sorry about that because I feel it's an honor to come to Putnam County and try cases here. But I feel that our 
THE COURT: Mr. Garlovsky, let me hasten to assure you, sir, that this Court welcomes you to come to Putnam County or any other courtroom over which I preside as a jurist.
You have not offended me in that it would lead to any prejudice towards your client.
I will assure you I will not do or say anything in the presence of the jury that will do anything but engender a sense of fairness in the trial.
Now, you do have, however, a rather unfortunate tendency which is that even after the Court has ruled you are inclined to want to speak to the same subject.
You're inclined not to phrase your questions in the way that the Court directs.
In those events, I assure you, sir, I will speak sharply to you because you will follow the directives of this Court in the conduct of these proceedings.
Once the Judge has ruled, whether it be a slow ruling or whether it be a quick ruling, then there is absolutely no point in arguing to the Court or asking the Court to recede from its ruling.
But all attorneys, as officers of the Court, are bound to follow the directives of the Court in the conduct of the proceedings.
If the Judge is wrong, there is an Appellate Court to tell him so, and they have on occasion told me that I was wrong.
But the procedure that we use in running this courtroom is the procedure that we normally use, it's the procedure we'll use in this case, and as far as I know will be the procedure we'll continue to use.
You're welcome to come here. You have not offended me. If you do, you'll find out about it.
Your motion or suggestion for disqualification is denied.
The next day, Garlovsky did offend the trial judge and did find out about it. On cross-examination of Lee, he again attempted to elicit the testimony that Lee had not appeared before the state attorney to give sworn testimony, and the state's objection again was sustained. On this occasion, however, Garlovsky made a vocal objection to the trial court's ruling in the presence of the jury. The trial judge immediately cleared the courtroom and this exchange occurred:
THE COURT: Mr. Garlovsky, for what purpose did you ask that question, sir?
MR. GARLOVSKY: Okay, I will tell your for what purpose, Your Honor.
THE COURT: I expect you to tell me for what purpose, sir, because I am just before holding you in contempt of this Court on willful and blatant disregard of this Court's directives and this Court's rulings.

*570 MR. GARLOVSKY: Okay. Your Honor, I do not feel there was any directive or ruling 
THE COURT: Answer my question 
MR. GARLOVSKY: Okay.
THE COURT:  Mr. Garlovsky 
MR. GARLOVSKY: Your Honor 
THE COURT:  that, and no more.
MR. GARLOVSKY: Okay.
THE COURT: Why did you ask 
MR. GARLOVSKY: Okay.
THE COURT:  that question?
Now wait until I get through, sir, and then you talk. The reporter is only going to take down one voice at a time.
MR. GARLOVSKY: Yes.
THE COURT: You will answer my question, sir, and follow my directive.
Now why did you ask that question?
MR. GARLOVSKY: Because Your Honor will submit this Information to the jury, as you did before, and this Information will be for the jury to read; and on the bottom of this line it says "personally appeared before me, Donald Holmes, Assistant State Attorney for the Seventh Judicial Circuit "
THE COURT: I'm familiar with what it says.
MR. GARLOVSKY: Okay. And it says 
THE COURT: And the Court takes judicial notice of the records of this Court.
MR. GARLOVSKY: And I 
THE COURT: Mr. Garlovsky, on a previous occasion in this proceeding you established the fact that no verification by personal appearance of this witness had been made by the State Attorney at the time of the filing of the original Information.
Thereafter, you moved this Court in that regard. The state filed an amended Information, the Court ruled on that question. It is a legal issue; it is not a factual issue for the jury to determine. And it is unethical for an attorney to present such a matter which is not within the province of the jury.
This Court therefore adjudges you in contempt of this Court.
It is the sentence of the law that you pay a fine of one hundred dollars to the Clerk of this Court for your such contempt; and in default thereof, you will be confined in the County Jail of Putnam County for and during the period of one day of twenty-four hours.
Now, the Court admonishes you, Mr. Garlovsky, that you will not in anywise do or perform any act in your advocacy of your client's rights that will violate the directives of this Court.
Now do you understand what I'm saying?
MR. GARLOVSKY: I understand what you've just performed for did to me here, Your Honor; but I would like to respond and make a request.
THE COURT: Make your request.
MR. GARLOVSKY: I request if this Court wishes to hold me in contempt that a hearing be held by another Judge, as to whether 
THE COURT: A criminal contempt is handled by the Judge in whose presence it is done.
Your request is denied.
MR. GARLOVSKY: Okay. Again, I felt it was my duty, Your Honor, that this jury should know that this witness had never appeared before the State Attorney 
THE COURT: Is that a province of the jury? No, it is not, sir. That is the reason that this Court has just adjudged you in willful direct contempt of this Court's directives. You will not do that again.
Now do you understand that?
MR. GARLOVSKY: Yes. I  I will not raise this issue again in this trial. I do not feel that the Court has ever given me any directive about questioning a witness about appearance before the prosecutor by which he swore to the facts of this Information.
THE COURT: That matter has been adjudicated by this Court on two different occasions in this proceeding.

*571 MR. GARLOVSKY: Okay. And again I felt because the Court submits this Information to the jury when they go in to deliberate in this case, that I felt they should know the facts behind how this witness appears.
THE COURT: It would still not be a matter within the province of the jury.
And counsel knows that the Code of Professional Responsibility dictates that you do not give a jury information that is not within the province of the jury to determine in a case.
Now, Mr. Garlovsky, you should know better than that, sir. And I expect you to know better in the future; and I expect you to conform to the Canons of professional responsibility.
MR. GARLOVSKY: Okay. Your 
THE COURT: All right. Mr. 
MR. GARLOVSKY: Your Honor, at this time I would request a mistrial and that the trial cease at this time, that I don't feel  again, I've asked you  that our differences are interfering with my representation; and I feel that she cannot receive a fair trial, and I would request a mistrial now that you have held me in contempt for which I felt was a legitimate question concerning an Information.
THE COURT: Your motion for a mistrial is denied. The trial will go forward.
Bring the jury back in.
The following day, October 12, the trial judge reduced the contempt judgment and sentence to writing in conformity with the oral pronouncement. See Sandstrom v. State, 390 So.2d 448 (Fla. 4th DCA 1980); Byrd v. State, 388 So.2d 1362 (Fla. 5th DCA 1980); Towson v. State, 382 So.2d 870 (Fla. 5th DCA 1980). The written order reads:
JUDGMENT AND SENTENCE
You, JOSEPH T. GARLOVSKY, for your wilful contempt in the courtroom in the course of a trial proceeding wherein you were representing one, MARIAN McCRAE, Case No. 79-328-CF, a proceeding before this Court, and your actions in connection therewith, all of which was committed in the presence of the Judge in open court, are hereby adjudged in criminal contempt of this Court. This contempt arose by you wilfully and deliberately seeking to elicit testimony from a witness, Harold Lee, which testimony would have placed an issue before the jury which would have been improper and which would, in all probability, have led to a mis-trial of the proceedings, which testimony was in fact known to you to be improper and which concerned a matter upon which the Court had ruled as a matter of law on two prior occasions; which testimony sought to be elicited, concerned factual information directed to the sufficiency of the information, a legal matter to be determined by the Court and clearly not a matter within the province of the jury.
It is the sentence of the law and such is the judgment of this Court that you, JOSEPH GARLOVSKY, shall pay a fine of $100.00 to the Board of County Commissioners of Putnam County, Florida, and, in default thereof, you shall be confined in the County Jail of Putnam County, Florida, under the supervision of the Board of County Commissioners of said County for and during the period of twenty-four (24) hours.
DONE AND ORDERED in open Court at Palatka, Putnam County, Florida, this 12th day of October, 1979, nunc pro tunc October 11, 1979.
 /s/ E.L. Eastmoore 
 CIRCUIT JUDGE
Issues I and II raised by the contemnee-appellant Garlovsky on appeal concern the procedural requirements of Rule 3.830: (1) Did the trial court's order sufficiently recite the facts upon which the adjudication was based, and (2) Was Garlovsky afforded the opportunity, prior to adjudication, to show cause why he should not be held in contempt and to offer evidence of excusing or mitigating circumstances?
The appellant's first point is without merit. The recited facts are clear and specific as to the basis upon which the trial judge relied for the adjudication of contempt; *572 the deliberate attempt by counsel to place before the jury the testimony of Lee in regard to the legal issue of sufficiency of the information, a matter which the trial judge previously had determined adversely to the defense position, and which clearly was not a matter for jury consideration. Although the order does not refer to it, the trial judge previously had noted counsel's "unfortunate tendency" to pursue a subject after the trial court had ruled upon it. The facts herein are distinguishable from the case of Ray v. State, 352 So.2d 110 (Fla. 1st DCA 1977), cert. denied, 360 So.2d 1250 (Fla. 1978), relied upon by the appellant, in that the order of contempt in that case alluded to "unjudicious, unethical and intemperate conduct" without specifically identifying that conduct. The appellate court found that order failed to "evidence particular events" to which the characterizations could reasonably apply. The particular event is clearly defined in the instant case. Moreover, the record clearly illustrates the factual grounds upon which the order of contempt is based. See Saunders v. State, 319 So.2d 118 (Fla. 1st DCA 1975).
The appellant also argues that the trial court did not explicitly direct him in advance of the question to Lee that provoked the contempt citation not to ask the question. In support of this contention, appellant cites Gilmour v. State, 358 So.2d 63 (Fla. 3d DCA 1978); and Olds v. State, 302 So.2d 787 (Fla. 4th DCA 1974), cert. denied, 312 So.2d 743 (Fla. 1975).
These cases are distinguishable from the facts of the instant case. In Gilmour, the defendant's attorney was cited for contempt for calling the jury's attention, during closing arguments, to the fact that the co-defendant had not testified. This comment was not inconsistent with any prior court ruling, and there was federal case authority supporting such a comment. These facts are clearly distinguishable from the instant case, where the trial court had repeatedly sustained objections to the attempt by defense counsel to present a legal issue to the trial jury and there was no reasonably arguable or tenable legal basis for appellant's conduct.
In Olds, the trial court erroneously cited a public defender for contempt for asking questions of a state witness, formerly represented by the public defender, relating to subject matter that was not privileged because it had been either divulged by the witness to third parties or was a matter of public record.
We do not believe that an attorney must be specifically admonished, in explicit, kindergarten terms, that he is to follow the trial court's rule. He is expected to know that if he is a lawyer. He should also know, without being told, that persistence in disregarding a trial court's rulings, in an effort to place improper matters before the jury, can lead to a contempt citation. Kleinfeld v. State, 270 So.2d 22 (Fla. 3d DCA 1972), cert. denied, 275 So.2d 251 (Fla. 1973); Saunders v. State.
The second issue raised on appeal is more troublesome. The trial judge, prior to the oral adjudication of contempt, did not follow the formal format implicit in Rule 3.830. Although the trial judge inquired of Garlovsky as to his purpose in asking the question and warned him that an adjudication of contempt was imminent because of the "blatant disregard of ... this Court's rulings," it appears that Garlovsky was still responding to the question at the time the court interceded and announced the adjudication. The court did listen to a further request from Garlovsky (that a different judge hold a hearing on the contempt matter) and properly denied that request. Garlovsky then stated that he felt that it was his duty to apprise the jury of the witness' failure to appear before the state attorney (before the original information was filed), but this expression came after judgment and sentence. In and of itself, it does not constitute an excusing or mitigating circumstance, but little, if any, opportunity was afforded Garlovsky to offer more.
In Keezel v. State, 358 So.2d 247 (Fla. 4th DCA 1978), a trial attorney was held in contempt and sentenced without proper allocution in accordance with Rule 3.830. The court noted in that case:

*573 This rule is frequently violated we would suppose due to the circumstances and atmosphere which frequently prevail in direct contempt situations. Often the trial judge has been provoked ... by other conduct which tries his patience. But patience is one of the characteristics which go to make up a good judicial temperament. Adjudicating a person, and particularly a lawyer, in contempt is a serious matter to be approached judiciously. No doubt that is why the rule requires that the person be afforded an opportunity to explain his conduct before being adjudicated guilty.
Keezel may or not have been guilty of contempt, but the adjudication here was premature and must be reversed so that Keezel will be afforded the opportunities granted by the rule to explain his conduct.
358 So.2d at 248.
In like manner, we believe that Garlovsky was prematurely adjudicated and sentenced under the rule. Prior to the adjudication of guilt and the imposition of sentence, the defendant must be informed of the accusation against him and afforded the opportunity to show cause why he should not be adjudged guilty and sentenced therefor. The opportunity to present evidence of excusing circumstances must precede the adjudication of guilt; the opportunity to present evidence of mitigating circumstances may be afforded at the same time but, at least, must precede the imposition of sentence.
The appellant's third point requires consideration because, if he is correct, it would be dispositive of this case and require reversal without the necessity for a remand for further action by the trial court. The appellant argues that his acts at trial do not rise to that degree of conduct which the law recognizes as contemptuous. He contends that there was an unfortunate personal conflict between himself and the trial judge, but that such should not be the basis for a contempt order.
The definition of contempt of court has been succinctly set forth in the case of Krathen v. State, 310 So.2d 381 (Fla. 4th DCA 1975):
Contempt of court has been variously defined as "an offense against the authority or the dignity of a court or of a judicial officer when acting judicially," Ex Parte Earman, 1923, 85 Fla. 297, 95 So. 755, 760, 31 A.L.R. 1226, or, "any act which is calculated to embarrass, hinder or obstruct the court in the administration of justice, or which is calculated to lessen its authority or its dignity", Ex parte Crews, 1937, 127 Fla. 381, 173 So. 275, 279, or, conduct "such as tends to bring the administration of the law into disrespect and disregard" or which "interferes with or prejudices parties litigant or their witnesses during litigation", 6 Fla. Jur., Contempt, § 2, or, as "disobedience to the Court, an opposing or a despising of the authority, justice or dignity thereof", South Dade Farms, Inc. v. Peters, Fla. 1956, 88 So.2d 891, 898.
310 So.2d at 383.
Trial judges are in the best position to evaluate trial conduct  not appellate judges reviewing a sterile and inanimate record far removed from the living and compelling realities of the trial bench. A willful disregard of prior court rulings can constitute a direct obstruction of the court. We cannot find that this record refutes such a finding by the trial court, which (contrary to the implicit suggestion of some cases)[3] is clothed on appeal with a presumption of correctness. Accordingly, in accordance with the case of Keezel v. State, the adjudication and sentence for contempt imposed by the trial court are reversed, and this cause is remanded to the lower court in order to afford the contemnee, Joseph Garlovsky, formal and full opportunity to show cause why he should not be adjudged guilty of contempt, and the opportunity to present evidence of excusing and mitigating circumstances.
REVERSED and REMANDED.
FRANK D. UPCHURCH, J., and COWART, JJ., concur.
NOTES
[1] Rule 3.830 reads:

A criminal contempt may be punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court. The judgment of guilt of contempt shall include a recital of those facts upon which the adjudication of guilt is based. Prior to the adjudication of guilt the judge shall inform the defendant of the accusation against him and inquire as to whether he has any cause to show why he should not be adjudged guilty of contempt by the Court and sentenced therefor. The defendant shall be given the opportunity to present evidence of excusing or mitigating circumstances. The judgment shall be signed by the judge and entered of record. Sentence shall be pronounced in open court.
[2] Said rule reads:

An information charging the commission of a felony shall be signed by the state attorney, or a designated assistant state attorney, under oath stating his good faith in instituting the prosecution and certifying that he has received testimony under oath from the material witness or witnesses for the offense. An information charging the commission of a misdemeanor shall be signed by the state attorney, or a designated assistant state attorney, under oath stating his good faith in instituting the prosecution. No objection to an information on the ground that it was not signed or verified, as herein provided, shall be entertained after the defendant pleads to the merits.
[3] See e.g., Ray v. State, 352 So.2d 110 (Fla. 1st DCA 1977).