398 So.2d 514 (1981)
Charles E. THOMSON, Appellant,
v.
STATE of Florida, Appellee.
No. 80-1675.
District Court of Appeal of Florida, Second District.
May 27, 1981.
*515 John M. Walters, St. Petersburg, for appellant.
Jim Smith, Atty. Gen., Tallahassee and Peggy A. Quince, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Charles E. Thomson appeals an order of criminal contempt entered by Judge Andrews for appellant's failure to appear for the call of the criminal calendar on September 10, 1980. We reverse.
Appellant is an attorney in private practice. On Monday, September 8, 1980, William H. O'Neal, who was facing trial on several serious charges, including an armed robbery, appeared in court and told Judge Andrews that his parents had retained appellant to represent him. The assistant public defender representing O'Neal moved to withdraw from the case, but the judge denied the request and continued the trial until September 10 because appellant and the judge had had a telephone conversation earlier that day in which appellant had indicated he would not be representing O'Neal.
At approximately 4:30 p.m. on September 9, appellant talked by telephone with the assistant state attorney prosecuting the case against O'Neal. Appellant felt he might be able to negotiate a plea bargain for O'Neal, who had already been convicted in another case and received a seventy-five-year sentence. The assistant state attorney explained that the offer he had made to the public defender was that O'Neal would receive concurrent sentences not to exceed the seventy-five-year sentence he had already received. Appellant left the assistant state attorney with the impression that appellant would be in court the following morning, September 10, for further discussion of the possibility of achieving a plea bargain.
At about 5:30 p.m. on September 9, O'Neal's parents arrived at appellant's office. Appellant discussed the case with the parents and concluded that since he could do no better for their son than the negotiated plea already offered to the assistant public defender, he did not want to take their money. He had taken a fifty dollar deposit and was holding four automobile titles as security for the balance of the attorney's fee. Appellant discussed the matter with the parents, indicating that he would not be representing their son and would return the automobile titles. He asked that the parents talk to O'Neal the *516 next day. Appellant presumed that the parents would tell the court of his decision not to represent their son.
At 8:30 a.m. on September 10, Judge Andrews called the calendar, and appellant failed to appear as attorney for O'Neal. The assistant state attorney told the judge that he understood that appellant would appear that morning. The assistant public defender was confused as to his representation of O'Neal, although he was still counsel of record. The judge directed the sheriff to pick up appellant and bring him to court.
At 11:15 a.m. on September 10, Judge Andrews convened a show-cause hearing in chambers, appellant having appeared voluntarily after his office notified him of the requested appearance. Appellant explained the situation, adding that he had been in another court in St. Petersburg that morning and apologizing to the court for the problem. Judge Andrews made an oral finding
that you have been so lackadaisical in this whole matter that your conduct in my mind as of 8:30 this morning when you failed to appear for this trial and in light of the conversation you had with Mr. Merkle [the assistant state attorney] yesterday afternoon, giving the only person involved in the case the understanding that you were still counsel of record that you have placed yourself in contempt of this Court and you now have an opportunity to show cause why you should not be found in contempt for your failure to appear here this morning at the time of the scheduled trial after having agreed to and having undertaken the representation of Mr. O'Neal. You now have the opportunity to show cause Mr. Thomson.
MR. THOMSON: I understand, your Honor, you mean other than what I have told the Court that is exactly what my involvement has been in the case, I filed no formal notice of appearance when I also spoke to Mr. Merkle yesterday I informed him that my client did not have alot [sic] of money, I was going to be unable to do anything with him more than the Public Defenders, and I didn't want to represent them or represent Mr. O'Neal.
MR. MERKLE: I am sorry, what was that statement?
MR. THOMSON: Pardon?
MR. MERKLE: May I have that read. (Reporter reads back statement.)
MR. MERKLE: That is not  that does not comport with my recollection of the conversation. My recollection he did state there was a lack of funds on the part of the O'Neals but he did state he was going to attempt to assist, he would be talking to Mr. O'Neal. Specific aspect of the conversation was the fact Mr. O'Neal had insisted to the Court he would not cooperate with the Public Defender and that counsel would be in a position to at least communicate with Mr. O'Neal and counsel did unequivocally state he was going to be present and would talk to Mr. O'Neal in an attempt to achieve negotiations in the case.
THE COURT: Okay, Mr. Thomson. No lawful cause having been shown and your having failed to offer good cause why you should not be found in direct contempt of this Court for your refusal and failure to appear this morning for trial, causing the Court to direct the Sheriff's Office to bring your body before the Court, which I assume may have been some incentive for you to finally appear, the Court does find you in contempt and you are sented [sic] to serve a period of five days in the Pinellas County Jail. Sheriff.
THE BAILIFF: Yes, sir. Mr. Thomson.
MR. THOMSON: Yes, your Honor, can I ask for a bond to be posted?
THE COURT: There will be no bond.
A written contempt order was entered that same day,[1] which recited that appellant was *517 "in direct Contempt of Court for failure to advise the Court as to his representation of the defendant in the case of the State of Florida vs. William H. O'Neal... ." The next morning appellant filed a motion for postjudgment release, which was denied. This appeal followed timely.
It is unclear whether the act Judge Andrews considered contempt was appellant's failure to advise the court concerning his representation of O'Neal or appellant's failure to appear for O'Neal's trial earlier that morning. In either event, however, we are of the opinion that the contempt judgment cannot stand.[2]
If, as stated in the written order, the contempt consisted of appellant's failure to appear, the evidence[3] is insufficient to support the judgment. An act which is calculated to embarrass, hinder, or obstruct a court in the administration of justice, or which is calculated to lessen its authority or dignity constitutes a contempt, Clein v. State, 52 So.2d 117, 119 (Fla. 1950); Ex parte Crews, 127 Fla. 381, 173 So. 275 (1937). Intent is an essential element of contempt. Florida Ventilated Awning Co. v. Dickson, 67 So.2d 218 (Fla. 1953); Young v. Miami Beach Improvement Co., 46 So.2d 26 (Fla. 1950); Department of Health & Rehabilitative Services v. State, 338 So.2d 220 (Fla. 4th DCA 1976). Although appellant's conduct does appear, as a practical matter, to have hindered the trial court in its efforts to dispose of the O'Neal case as quickly as possible while affording O'Neal sufficient time to prepare his defense, the evidence falls far short of establishing that appellant intended his failure to appear for trial to have that effect.
Intent, absent a statement thereof or an admission by the accused, which is not present here, must be inferred from the acts of the accused and the surrounding circumstances, State v. J.T.S., 373 So.2d 418 (Fla. 2d DCA 1979); i.e., it must be established by circumstantial evidence. Where circumstantial evidence alone is relied on to establish the commission of a crime or any essential element thereof, it must be inconsistent with any reasonable hypothesis of innocence. McArthur v. State, 351 So.2d 972 (Fla. 1977). Here the evidence was equally susceptible of the inference that appellant merely behaved negligently or irresponsibly in relying on O'Neal's parents to explain the situation to the trial court rather than himself notifying either the judge's office or the assistant state attorney of his intention not to appear on behalf of O'Neal. Appellant therefore cannot be guilty of criminal contempt.
Moreover, if the act constituting appellant's alleged contempt consisted of his failure to notify the judge himself or the assistant state attorney of his intention not to appear, which we think was, in fact, the real omission to which Judge Andrews objected, the contempt, if any, must necessarily have been indirect contempt. In order to be treated as a direct contempt, the act constituting the contempt must be committed in the immediate presence of the court, whereas a contemptuous act committed out of the presence of the court constitutes indirect contempt. Sharp v. Sharp, 209 So.2d 245 (Fla. 2d DCA 1968); In re S.L.T., 180 So.2d 374 (Fla. 2d DCA 1965). Since notification by appellant of the assistant state attorney or the judge's secretary would have been as satisfactory as his speaking personally to the judge himself, and this notification would have been given out of Judge Andrews' immediate presence, it is clear that appellant's failure to notify anyone other than O'Neal's *518 parents could not possibly constitute a direct contempt.
Florida Rule of Criminal Procedure 3.840 governs indirect criminal contempt. The procedural due process safeguards set forth therein were not complied with here. No order to show cause was issued, nor was appellant apprised prior to the hearing of the essential facts constituting the alleged contempt, as required by rule 3.840(a)(1). Judge Andrews' failure to adhere to the requirements of the rule mandates reversal of the contempt judgment. Pugliese v. Pugliese, 347 So.2d 422 (Fla. 1977).
For the foregoing reasons the judgment of contempt is REVERSED.
HOBSON, Acting C.J., and BOARDMAN and OTT, JJ., concur.
NOTES
[1] We presume that the September 9 filing date stamped on the order is incorrect.
[2] We assume on the basis of the appellate record that appellant has already served his sentence, so that this court is foreclosed from sparing him that. Absent some legitimate concern on the part of Judge Andrews that appellant might seek to avoid serving his sentence should this court affirm  a concern which may or may not have actually existed  we consider the judge's refusal to release appellant on bond pending appeal an abuse of judicial discretion.
[3] The "evidence" before Judge Andrews consisted of unsworn statements by appellant, Merkle, and O'Neal's mother.