518 So.2d 1370 (1988)
In re Louis J. WEINSTEIN,
In re Case No. 85-13572DF.
Nos. 87-0230, 87-0275.
District Court of Appeal of Florida, Fourth District.
January 20, 1988.
Louis J. Weinstein, Hollywood, pro se.
Robert A. Butterworth, Jr., Atty. Gen., Tallahassee, and Amy L. Diem, Asst. Atty. Gen., West Palm Beach, for appellee.
STONE, Judge.
Appellant, an attorney, was twice held in direct contempt during the conduct of a civil jury trial for disregarding the orders of the trial court that he rise when making objections. On the first day of trial, the court, after commenting on his difficulty in hearing, advised the appellant:
THE COURT: I sustain the objection.
Next time you address the Court and don't stand up, I'm going to get a little tougher about that. That is about four times that I reminded you.
MR. WEINSTEIN: Okay.
*1371 On the following morning counsel again failed to rise when addressing the court. The record reflects the following warning:
THE COURT: Mr. Louis Weinstein.
MR. WEINSTEIN: Yes, sir.
THE COURT: Sir, the next time that I have to tell you to stand up when you address this Court, I'm going to hold you in direct contempt of this Court. Do you understand that?
MR. WEINSTEIN: Yes, Your Honor.
THE COURT: I have done it about four or five times already. This is the first time this morning, and you continue to refuse to stand up.
MR. WEINSTEIN: I'm sorry, Your Honor. I'm not doing it intentionally.
When appellant again failed to stand when making an objection, the trial court ordered him to show cause why he should not be held in contempt. Appellant argued that his conduct was not intentional, but added, "[B]ut I don't see  with all due respect, I don't see the difference if you can hear me."
The trial court held appellant in contempt noting that he had been warned on the previous day and four or five times on that day. The court sentenced appellant to a fine of $250.00 or three (3) days in jail.
On the third day of trial, the record reflects the following exchange:
THE COURT: Mr. Weinstein, I have a hard time believing this. I have just a difficult time believing that you insist upon remaining seated at your table after I have held you in contempt yesterday and fined you $250.00
I have repeatedly told you about it. I just find it almost impossible to believe that you insist on doing this. You have come in here 14 minutes late today and held up the whole thing and remained seated there.
I didn't say a thing the first times you objected this morning and you remained seated, but I just can't run a courtroom if you insist on just directly and flagrantly violating my orders.
MR. WEINSTEIN: Your Honor, I apologize again. I'm not doing it purposely, Your Honor.
Here's the problem I have. If I remain seated  I mean, if I have to stand up, sometimes I can't get up fast enough or sometimes I'm writing.
... .
THE COURT: I'm going to give you an opportunity to show me cause this morning why you shouldn't be held in contempt.
To this Mr. Weinstein responded:
MR. WEINSTEIN: I'd like to put some things on the record.
First of all, I'd like to note that throughout this trial Mr. Buschmann has not stood up on many occasions and you have never censored or fined him.
Second of all, it is not intentional. I have told you I am not doing it intentionally. I wouldn't flagrantly disobey your order. But I do have a problem standing up quick enough.
I'm at the peril of either not objecting because I can't get up soon enough and letting the jury hear something they're not supposed to hear, or standing all the time and then I can't take notes if I'm standing.
Then when I stood you got mad that I was standing yesterday.
I just don't think you are being reasonable with me, Your Honor. I don't  with all due respect, I don't think you're being reasonable.
Mr. Buschmann on several occasions has not stood up when he made objections and you never once reproached him.
I don't see  I mean, you have a right to run the courtroom the way you want, but if you can hear the objection, I don't see what substantial difference it makes whether I'm standing or sitting.
And most of the judges in this courthouse allow you to sit or stand. They don't specifically require you to stand up when you make an objection or else you're in contempt.

*1372 And this was not intentional at any time. I'm  I don't want to get you angry at me or prejudice my client's case. I just have trouble standing up fast enough to make the objection.
First of all, I'm sitting there and I'm writing, taking notes on what the witness is saying. Then I have got to decide whether what the witness is saying is objectionable. Then I have to decide if it is do I object. Then I have to stand up.
I mean, if I have to stand up every time I object, there's no way I can properly object to all the questions that are objectionable.
The appellant was again held in contempt, the court stating:
THE COURT: All right, sir. Let the record reflect that during this commentary by Mr. Weinstein of putting his things on the record he continued to turn his back on the Court. His voice is heavy with sarcastic inflection. The expressions on his face are not pleasant expressions and I can't  I can't find where there is any good cause why he should not be adjudged in contempt of this court.
I'm certain that when you go before the District Court of Appeal, they don't allow you to sit, they allow you to stand.
Now, if you have a physical problem, that's different, or if you have an age problem where you're too old, that's different and we'll talk about it. But I don't see that here.
Here I see sarcasm and deliberate refusing to stand. Now, whether it is deliberate, you keep telling me it is not, but then you tell me you can't see what difference it makes what you do when I gave you a specific order at the beginning of the trial and I repeatedly reminded you about it. I don't know how to get it across to you.
You're the first person, and I've been judging for over 17 years I guess, and you're the first lawyer that I can't get it across to that they have to stand up to address the Court. I don't know why.
And I'm certainly not mad at your client. If I was mad at your client, I would, maybe if I ever got mad at your client, I would mistry this and recuse myself. I wouldn't do that to your client.
But I'm just concerned, and so I'm going to find you are in contempt of this Court once again. Do you have anything you wish to say as to why you shouldn't be sentenced at this time other than what you've said?
Following additional comments by counsel on sentencing, the court ordered appellant a fine of $1,000.00 or thirty (30) days.
After advising appellant of his right to appeal within thirty (30) days, the court told him to turn himself over to the Sheriff if he failed to pay the fine by 5:00 p.m. on that afternoon.
Appellant contends that his acts do not constitute contempt. He further claims that the court abbreviated his time to appeal and that the written judgment is incomplete in that it does not contain a statement of the facts.
A judgment of contempt comes to this court with a presumption of correctness. State ex rel. Garlovsky v. Eastmoore, 393 So.2d 567 (Fla. 5th DCA 1981); Krueger v. State, 351 So.2d 47 (Fla. 3d DCA 1977).
Contempt of court has been defined in many ways, including: "[a]n offense against the authority or the dignity of a court or of a judicial officer... .," Ex Parte Earman, 85 Fla. 297, 95 So. 755 (1923), "[a]ny act which is calculated to embarrass, hinder, or obstruct the court in the administration of justice, or which is calculated to lessen its authority or its dignity... .," Ex Parte Crews, 127 Fla. 381, 173 So. 275 (1937), or as "[d]isobedience to the Court, an opposing or a despising the authority, justice, or dignity thereof," South Dade Farms, Inc. v. Peters, 88 So.2d 891 (Fla. 1956) (quoting Oswald, Contempt of Court, page 5). See also Krathen v. State, 310 So.2d 381 (Fla. 4th DCA 1975); Kleinfeld v. State, 270 So.2d 22 (Fla. 3d DCA 1972), *1373 cert. denied, 275 So.2d 251 (Fla. 1973). In Kleinfeld, a contempt judgment was upheld where counsel, in disregard of numerous requests and orders of the trial court, had continued to engage in a series of repetitive motions:
Proceeding "not wisely but too well", Othello, Act V, Sc. 2, appellant, an attorney, forgot in his probably otherwise commendable zeal for his client that "any breach of an attorney's duty to maintain the respect due by him to the court is a contempt of court," 6 Fla.Jur., Contempt, Sec. 12, p. 569; he was undeterred by the admonition of Florida Civil Trial Practice, 2d Ed., Sec. 25.11, 8., that one of the "remedies for misconduct" on the part of "the trial lawyer" is a "contempt citation for misconduct continued after warning"... .
Id. at 22.
In Wells v. State, 471 So.2d 620 (Fla. 5th DCA), dismissed, 478 So.2d 54 (Fla. 1985), a contempt judgment was upheld where counsel violated an order limiting the time for closing argument:
Any time an officer of the court openly disregards a court order, no matter how insignificant the order may seem, he obstructs the administration of justice. In Ward v. State, 354 So.2d 438, 439 (Fla. 3d DCA 1978), the court stated:
The orderly conduct of a trial requires that a defendant and his attorney obey the rulings of the trial judge and appeal those rulings which are objectionable. A refusal to obey the rulings of a trial judge on the ground that the ruling is improper may result in the inability of the courts to administer justice.
Appellant submits that his conduct in disregarding the trial court's twenty-minute limit on his closing argument does not constitute contempt of court as that phrase is defined in Krathen v. State, 310 So.2d 381 (Fla. 4th DCA 1975). This court quoted Krathen's definition with approval in State ex rel. Garlovsky v. Eastmoore, 393 So.2d 567 (Fla. 5th DCA 1981). Clearly, as we noted in State ex rel. Garlovsky v. Eastmoore "[a] willful disregard of prior court rulings can constitute a direct obstruction of the court." 393 So.2d at 567.
Id. at 624. In Ward v. State, 354 So.2d 438 (Fla. 3d DCA 1978) a judgment for contempt was upheld where counsel pursued a line of questioning during voir dire contrary to the directions of the court. See also State ex rel. Garlovsky v. Eastmoore.
The issue of contempt for disobedience of a court order was fully examined in Sandstrom v. State, 309 So.2d 17 (Fla. 4th DCA 1975), cert. dismissed, 336 So.2d 572 (Fla. 1976). This court held that willful disobedience of a court order represents an affront to the court's authority. In Sandstrom, counsel was held in contempt for disobeying a direct court order that he wear a tie. This court reasoned that judges have the inherent power to control the decorum of counsel in the courtroom, provided that the court's action bears a reasonable relation to a justifiable purpose. The issue in Sandstrom was not whether failure to wear a tie constituted contempt, but whether disregard of a court order to do so could be considered contempt. Similarly, the failure to stand when making objections, by itself, does not constitute contempt, but intentionally failing to do so after being thoroughly cautioned may.
The awesome power to punish for contempt should be cautiously and sparingly exercised. Sandstrom v. State; Harper v. State, 217 So.2d 591 (Fla. 4th DCA 1968), cert. dismissed, 224 So.2d 684 (Fla. 1969). We recognize that the particular conduct found offensive in this case might well have passed unnoticed or gone without comment in many other courtrooms. Nevertheless, counsel who intentionally disregards an order of the trial court, even an order that is erroneous, subjects himself to a contempt citation. See Vizzi v. State, 501 So.2d 613 (Fla. 3d DCA 1986), rev. denied, 506 So.2d 1043 (Fla. 1987); Wells v. State; Sandstrom v. State. Decorum in the courtroom is the responsibility of the *1374 trial judge and contempt is one of many methods available for enforcing the exercise of this responsibility.
Although appellant contends that his action was unintentional, there is ample support in the record for the conclusion that the defendant's conduct speaks loudest for itself. The trial court noted that appellant's demeanor was sarcastic and that he had deliberately disregarded the court's admonitions. A mere disclaimer by the appellant that his conduct was not willful or intentional does not deprive the court of the power to declare it to be contempt and punish it accordingly. Cf. Cormack v. Coleman, 120 Fla. 1, 161 So. 844 (1935); Wilson v. Joughin, 105 Fla. 353, 141 So. 182 (1932); Wells v. State; Ward v. State. The trial court's determinations should not be disregarded if supported by facts and inferences drawn from the record. Ward v. State.
With respect to appellant's contention that the order fails to comply with rule 3.830, Florida Rules of Criminal Procedure, we find that the defect in this case is not sufficient to invalidate the judgment. See Saunders v. State, 319 So.2d 118 (Fla. 1st DCA 1975), cert. dismissed, 344 So.2d 567 (Fla. 1977).
We find no merit in appellant's contention that the court deprived him of his thirty (30) days to appeal by ordering him to pay his fine or submit to incarceration on that day. See Krathen v. State, 310 So.2d 381 (Fla. 4th DCA 1975). After sentencing, appellant had thirty (30) days to appeal and the right to seek appeal bond or release on recognizance upon filing a notice of appeal within that time.
The contempt judgments and sentences are, therefore, affirmed.
DELL, J., concurs.
GLICKSTEIN, J., dissents with opinion.
GLICKSTEIN, Judge, dissenting.
I respectfully dissent because I do not think appellant's conduct was "calculated to embarrass, hinder, or obstruct a court in the administration of justice, or ... to lessen its authority or dignity... ." Thomson v. State, 398 So.2d 514, 517 (Fla. 2d DCA 1981) (citing Clein v. State, 52 So.2d 117, 119 (Fla. 1950); Ex parte Crews, 127 Fla. 381, 173 So. 275 (1937)) (emphasis in original).
The word "calculated" in that quotation refers to intent, about which Thomson teaches us the following:
Intent, absent a statement thereof or an admission by the accused, which is not present here, must be inferred from the acts of the accused and the surrounding circumstances, State v. J.T.S., 373 So.2d 418 (Fla. 2d DCA 1979); i.e., it must be established by circumstantial evidence. Where circumstantial evidence alone is relied on to establish the commission of a crime or any essential element thereof, it must be inconsistent with any reasonable hypothesis of innocence. McArthur v. State, 351 So.2d 972 (Fla. 1977).
Id. The appellate court in Thomson found that the appellant's conduct was equally susceptible of characterization as irresponsible or negligent, as it was as intentional. The terms "irresponsible" and "negligent" may reasonably be applied also to the conduct of present appellant; not to mention nervous, awkward, inept and perhaps a host of other pejorative descriptors. An attorney's seemingly bumbling behavior is not laudable, and may not even be tolerable, but it is not punishable as contempt.
The majority evidently relies on the trial court's conclusion that appellant's discourteous conduct was intentional. Although a trial court's findings of fact are entitled to deference, I respectfully submit my colleagues may be overlooking the wisdom of Thomson as well as the test for criminal contempt, which appears in Vines v. Vines, 357 So.2d 243 (Fla. 2d DCA 1978):
In determining whether conduct amounts to criminal contempt, the true test is whether the conduct interferes with or impugns the judicial function, not whether it causes a particular judge to *1375 feel aggrieved or vexed. Thus, the standard to be applied is objective, not subjective. Punishment for contempt of court is allowed to be imposed, not to satisfy an offended judge, but to vindicate the authority and dignity of the judicial office.
Id. at 246, (citing Ex parte Earman, 85 Fla. 297, 95 So. 755 (1923)).
In Zarate v. Culbreath, 150 Fla. 543, 8 So.2d 1 (1942), the basis for the trial court's holding the defendants in contempt was their graphic allegation, in a pleading seeking to show disqualification of the judge because of prejudice, that the judge had angrily refused an application presented in their absence by their counsel for reduction of the amount of their bail bonds. The same counsel evidently testified categorically that the judge had not angrily refused the application, but refused it for his own reasons. The appellate court reversed, stating if the offending allegation was material  they did not think it was  those who verified it under oath could have been prosecuted for perjury and tried to a jury. On the way to reversing the contempt convictions, Justice Buford wrote for the court:
This court has held that: "* * * even in cases of proceedings to invoke the disqualification of a judge, the power to punish for contempts exists where there is such uncalled for acts or wrongful conduct as amounts to an actual and direct obstruction to, or interference with the administration of justice, * * *." State v. Peacock, 113 Fla. 816, text 817, 152 So. 616, 617.
"Judicial wisdom and the experiences of the past would seem to demand that the extraordinary powers given to courts to punish for contempts be not used except to prevent actual and direct obstruction of, or interference with, the administration of justice, * * *." State v. Peacock, 113 Fla. 816, text 817, 152 So. 616.
"Determination of the facts and inferences to be drawn therefrom is necessarily left to the decision of the trial judge, and his conclusion as to the acts done, and as to their contemptuous character or effect, will not be lightly disturbed by this court on habeas corpus. Nor will the findings of the judge ordinarily be set aside when reasonably supported by the facts appearing of record. State ex rel. Grebstein v. Lehman, 100 Fla. 481, 129 So. 818." Baumgartner v. Joughin, 105 Fla. 335, text 343, 141 So. 185, 188.
When we adhere to the enunciation contained in State v. Peacock, supra, we are brought to answer the question, whether or not the offending allegation was one which could reasonably result in "actual and direct obstruction to, or interference with, the administration of justice". Aside from this we may consider whether or not the alleged offending act was such as to reasonably result in bringing the Judge or the Court into contempt, disrespect or shame in the public eye.
Neither result is apparent here. A Judge's righteous anger may be aroused or his sense of pleasure and amusement may be awakened, his sympathies may go out to the unfortunate. He is human, and if he evinces human emotions without allowing them to deter him from the path of rectitude, no one should think the less of him therefor.
Id. at 548-49, 8 So.2d at 2-3.
Whereas the Zarate reviewing Court reversed contempt convictions for making a false accusation against the trial court, the majority here affirms appellant's contempt conviction for failing to obey the trial court's order to stand before raising objections. My colleagues do this even though it is as reasonable to conclude from the evidence that appellant's conduct was unintentional as that it was intentional. I am surprised and chagrined.
Finally, I would commend to my learned colleagues, to the trial judge who found appellant in contempt  and humiliated him by subjecting him to arrest and jailing  as well as to bench and bar at large, some quiet meditation upon the following words *1376 which the immortal poet put in the mouth of an early, albeit fictional, woman attorney:
The quality of mercy is not strain'd; It droppeth as the gentle rain from heaven Upon the place beneath: it is twice bless'd; It blesseth him that gives and him that takes: 'Tis mightiest in the mightiest; it becomes The throned monarch better than his crown; His sceptre shows the force of temporal power, The attribute to awe and majesty, Wherein doth sit the dread and fear of kings; But mercy is above this scepter'd sway,  It is enthroned in the heart of kings, It is an attribute to God himself; And earthly power doth then show likest God's When mercy seasons justice.
A soupcon of mercy does not dilute the elixir we call justice; it infuses it, if not with godliness, then at least with humanity. If we must err, let it be on the side of humaneness.
We may  perhaps should  sympathize with the trial judge, who is probably under constant stress, and was understandably irritated by seemingly discourteous conduct of counsel; but we need not deprive counsel of his dignity in order to show that sympathy.