CAMPBELL, Judge.
Appellant, Douglas V. Zelman, appeals the trial court order holding him in indirect criminal contempt. We reverse.
The order on appeal arises from a dissolution of marriage proceeding between appellant and his former wife, Beverly G. Zelman (Wife). The final judgment of dissolution of marriage was rendered on December 24, 1986. No appeal was taken from that final judgment. However, the record on appeal in this proceeding reveals activity by the parties since the final judgment that could fill a textbook on “How Not to Get Along Following Dissolution of Marriage.” The provision of the final judgment which precipitated appellant’s adjudication of indirect criminal contempt is a requirement that appellant “shall maintain a full benefit health insurance policy for the benefit of Respondent/Wife.”
On July 16,1987, Wife filed a motion for an emergency temporary restraining order that alleged appellant was physically abusing Wife. On that same day, the trial court entered a temporary injunction that, among other things, “temporarily restrained and enjoined (appellant) from coming about, harming, harassing or interfering with the Respondent.” On March 5, 1990, Wife filed a motion for contempt that alleged appellant had violated the temporary order of July 16, 1987, by interfering with Wife’s processing of claims for medical care and with her receipt of payments for same. On May 3, 1990, the trial court entered an order enjoining appellant from interfering with the processing of Wife’s medical care claims. On December 6, *189 1991, Wife filed a motion for contempt alleging appellant had failed to pay her health insurance premium within thirty-one days of the due date. On December 12, 1991, the trial court rendered an order finding the motion for contempt moot because the premium had been paid on the day the motion had been filed. On March 4, 1992, Wife filed a petition requesting that appellant be ordered to show cause why he should not be held in indirect criminal contempt for failure to timely pay her health insurance premiums, thus violating the court’s temporary injunction of July 16, 1987, by “harming, harassing, or interfering with the Respondent/Wife.” The order to show cause issued on March 10, 1992.
At the final hearing on the order to show cause, held on May 26, 1994, the trial court narrowed the issues to be decided to whether appellant’s late payment of Wife’s insurance premiums was harassment. Wife testified that she had multiple medical problems dating back to the marriage which required maintenance of three separate insurance policies. Wife testified that the problems involving the payments of her insurance policy premiums arose during 1989 and, as a result, she scheduled court dates on orders to show cause to force appellant to comply with the previous order of the court that he maintain her health insurance coverage. Wife also testified that between 1989 and March 1992, every quarterly insurance premium payment except one was late. As a result, she consistently received late notices from the insurance company threatening cancellation. Wife stated that the stress created by the constant threat of her insurance being can-celled exacerbated her condition and caused her to obtain emergency medical treatment on a number of occasions. It is unexplained why Wife continued to receive premium notices. It appears that the simple act of having appellant receive the notices would have alleviated Wife’s anxiety.
Appellant’s insurance representative testified that appellant occasionally paid premiums late, but never beyond the grace period. The insurance representative testified that appellant had questioned him in the past about how late he could make a premium payment, but that he always paid it prior to the last day.
Appellant testified that Wife would send him the premium notices over the two-year period and that Wife would set a contempt hearing, sometimes ten days into the grace period. Appellant denied that he ever purposely held premium payments back in order to trigger cancellation notices being sent to Wife and acknowledged that the great majority of his premium payments were made after the due date.
Appellant testified that he went through bankruptcy during the period that he made payments within the grace period on Wife’s health insurance. The final judgment of dissolution mandates maintenance of a health insurance policy, but provides no specifics regarding the timeliness of payment. Standing alone, the final judgment of dissolution did not put appellant on notice that he would be subject to contempt proceedings for harassment in the event that he paid Wife’s health insurance premium past its due date, but within the allowable grace period. The temporary restraining order also fails to specify that payment of the premium past the due date, but within the allowable grace period, will constitute harassment.
It, therefore, has not been sufficiently established for the purpose of indirect criminal contempt that appellant was adequately apprised of the conduct that was prohibited in regard to the timeliness of his payments of Wife’s health insurance premiums.
In something of a paradox, subsequent to the order to show cause issued on March 10, 1992, but prior to the final hearing thereon on May 26,1994, the court rendered an order on March 24,1992 which provided as follows:
THIS CAUSE coming on to be heard on March 17, 1992 upon the Order to Show Cause which involved, inter alia, the issue of the timely payment of the major medical and hospitalization insurance premium to Nationwide Insurance Company pertaining to the group conversion trust in the name of Beverly Green, being I.D. No. 90-1-1-10, and the Court recognizing that the original Final Judgment of Dissolution of Marriage provides that the Husband shall provide a full benefit health insurance poli *190 cy for the Wife as additional alimony, and that the Court has the inherent power to direct that the payments on such insurance be timely made in accord with the terms and conditions of the policy to preclude the policy from lapsing, and being otherwise fully advised, it is thereupon
ORDERED AND ADJUDGED that the Husband, DOUGLAS V. ZELMAN, shall hereafter make the quarterly premium payments in a timely manner in accord with the provisions of the Certificate of Insurance which does provide that such payment shall be made on February 1, May 1, August 1, and November 1 of each year at the office of Nationwide Insurance Company, Box 2399, Columbus, Ohio 43216, or at such other address as the company may direct from time to time in any premium notice, but in no event shall the payments be made to an agent of the company that is precluded under Page 657 of the policy from accepting any late premiums or extending the due date of any premium, and further in no event shall the payment be made by the Husband, DOUGLAS V. ZELMAN, in any manner such that the company does not receive payment within the applicable grace period of 31 days following the quarterly due date.
That order specifically allowed appellant to make premium payments beyond the due date but within the grace period, the very conduct that was subsequently found to be harassment of Wife and for which appellant was found to be in indirect criminal contempt.
In Bowen v. Bowen, 471 So.2d 1274, 1279 (Fla.1985), our supreme court held:
Criminal contempt proceedings are appropriate when it can be established that the party in default has continually and willfully neglected his support obligations, or has affirmatively acted to divest himself of assets and property. An indirect criminal contempt proceeding must fully comply with rule 3.840, Florida Rules of Criminal Procedure, and defendants are entitled to the appropriate due process protections, which may include court-appointed counsel. In such a proceeding, the movant must prove, beyond a reasonable doubt, that the defendant willfully violated the court order.
In Amerivend Corp. v. West Dade Ltd., 627 So.2d 1258 (Fla. 3d DCA 1993), the Third District reviewed its position on the requirements and circumstances for holding a person in contempt by quoting from Kranis v. Kranis, 313 So.2d 135, 139 (Fla. 3d DCA 1975) as follows:
This court has said:
[A] party should not be held to be in contempt for violation of an order, or provision of a judgment, which is not clear and definite, so as to make the party aware of its command and direction, as applied to a given circumstance upon which such party is called upon to act, or refuse to act.
Thus in Hettinger v. McMahon, (Fla.App. 1964), 164 So.2d 553, 555, the court said:
“The real question raised in this controversy is whether or not the appellants were sufficiently charged with the knowledge of what they were required to do in order to comply with the decree of the court. Without doubt obedience of a court order must be secured, and to secure such obedience is the usual function of a proceeding for contempt. However, courts should be explicit and precise in their commands and should only then be strict in exacting compliance.
“On the other hand, if a court order directed to litigants is too general and appears too burdensome and uncertain in its scope the aggrieved parties should petition the court for modification, clarification or construction of the order, and if they fail to do so they act at their own peril. However, we are satisfied that this rule must be applied with great caution in contempt matters where severe penalties can be pronounced.”
Kranis v. Kranis, 313 So.2d 135, 139 (Fla. 3d DCA 1975).
In Paul v. Johnson, 604 So.2d 883, 884 (Fla. 5th DCA 1992), the Fifth District has spoken similarly as follows:
For a person to be held in contempt of a court order, the language of the order must be clear and precise, and the behav *191 ior of the person must clearly violate the order. Here, the order specified the time and place of supervised visitation, but it did not go further and bar Paul from telephoning, corresponding with, or seeking to catch glimpses of her children in public places.
Paul testified she did not think the order forbid her from trying to make such contacts with her children. Intent is an essential element of contempt, and absent an admission by the charged person, it must be established by circumstantial evidence. Thomson v. State, 398 So.2d 514 (Fla. 2d DCA 1981). In this ease, the circumstantial evidence is not “inconsistent with any reasonable hypothesis of innocence.” Thomson. It is quite plausible Paul had no willful intent to violate the court order.
(Footnotes omitted; emphasis in original.)
Neither the order that appellant was charged with violating nor his actions in regard to it satisfy the test for indirect criminal contempt.
Appellant has also raised a jurisdictional issue which we find has no merit.
Appellant’s conviction for indirect criminal contempt is reversed and remanded.
RYDER, C.J., and PATTERSON, J., concur.